IN THE UNITED STATES DISTRICT
COURT NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DON M. HEARD, | Case No. 1:20-CV-02299-BMB |
| Petitioner, | JUDGE BRIDGET MEEHAN BRENNAN |
| v. | MAGISTRATE JUDGE JENNIFER DOWDELL ARMSTRONG |
| DAVID GRAY, Warden, | |
| Respondent. | **REPORT & RECOMMENDATION** |

## I. INTRODUCTION

Petitioner, Don M. Heard ("Mr. Heard"), seeks a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 1). Mr. Heard is serving a six-year term of imprisonment for one first-degree felony count of rape in violation of R.C. § 2907.02(A)(2).

Mr. Heard, through counsel, asserts four grounds for relief. *Id.* Mr. Heard filed a brief in support of his petition on November 4, 2020. (ECF No. 5). Respondent, Warden David Gray ("Warden"), filed an answer/return of writ on February 26, 2021. (ECF No. 9). Mr. Heard filed a traverse on March 18, 2021. (ECF No. 11).

This matter was referred to me on September 2, 2022, under Local Rule 72.2 to prepare a report and recommendation on Mr. Heard's petition and other case-dispositive motions. (*See* ECF non-document entry dated September 2, 2022). For the foregoing reasons, I recommend that Mr. Heard's claims be DENIED. I further recommend that this Court not grant Mr. Heard a certificate of appealability.

1

## II.     RELEVANT FACTUAL BACKGROUND

For purposes of habeas corpus review of state court decisions, a state court's findings of fact are presumed correct and can be contravened only if the habeas petitioner shows, by clear and convincing evidence, that the state court's factual findings are erroneous. 28 U.S.C. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. The Ohio Court of Appeals for the Eighth District summarized the facts as follows:

> {¶ 4} In 2017, Heard, then 22 years old, began a romantic relationship with K.D. ("Mother"), who had two minor daughters, L.D. and E.D. During her relationship with Heard, K.D. was involved in divorce proceedings with her ex-husband, El.D. ("Father"). Father was designated as the children's residential parent and Mother was granted visitation rights. Father's fiancée, L.G., testified that Mother was experiencing financial difficulties during 2017, and periodically lived in hotel rooms.
>
> {¶ 5} E.D. (d.o.b. 02/10/03) testified that in the summer of 2017, she was 14 years old. During this relevant time period, Mother did not have permanent housing and "would bounce around going from motels, my grandmother's house, or [my oldest] sister." E.D. testified that she and L.D. frequently spent nights in hotel rooms during their scheduled visits with Mother. However, when Mother could not stay at a family member's home or could not afford a hotel room for the evening, they would sleep in Mother's van. E.D. testified that she first met Heard in December 2016. E.D. stated that she liked Heard and that they shared common interests given their relative proximity in age.
>
> {¶ 6} E.D. testified that over time, Heard began doing things that made her feel "uncomfortable." On the first occasion, Heard asked E.D. if she was wearing underwear while they were together at a mall. On the second occasion, Heard was alleged to have "touched [E.D.'s] vagina with his hand" while they were in Mother's van one evening. E.D. testified that Mother was sleeping in the back of the van at the time of the incident. When asked to describe Heard's specific actions, E.D. stated that Heard placed his hand inside her underwear and penetrated her vagina with his fingers. The incident lasted approximately 45 seconds and E.D. "stayed still" because she was "in shock of what was happening." Once Heard removed his hand, he "grabbed the back of [E.D.'s] neck and pushed [her] head down" towards his penis. E.D. testified that Heard made her "give him oral until he ejaculated." E.D. stated that she did not fight back or tell Heard "no" because she was scared.

2

{¶ 7} On a third occasion, E.D. was staying overnight with L.D., Mother, and Heard in a hotel room located in Westlake, Ohio. Earlier in the evening, Heard and Mother went to a nightclub together and had been drinking. E.D. testified that when Heard returned to the hotel room, he approached her as she was sleeping in a bed with L.D. Heard then "pulled the blanket off of [E.D.] and [gave her] oral." E.D. explained that Heard's "mouth touched her vagina." The following morning, E.D. was washing her face in the hotel room sink when Heard "grabbed her" and "moved her" into the bathroom. Heard then pulled down E.D.'s sweatpants and inserted his penis into her vagina until he ejaculated. E.D. stated that she did not fight Heard off or tell him to stop because she was scared her sister would see or hear what was occurring. She further stated that she was afraid and "felt like [she] couldn't talk, move, or anything."

{¶ 8} E.D. testified that she did not immediately tell anyone about the incident because she was "nervous to say something about it" and did not "want to explain what happened." Eventually, however, E.D. told Mother about what had occurred. E.D. stated that Mother began crying and went to confront Heard. However, when Mother returned from speaking with Heard, she was angry with E.D. and left to spend the evening with Heard. Several days later, E.D. told her younger sister, L.D., about what Heard had done to her in the hotel room bathroom. L.D. testified that E.D. warned her "not to tell anyone." Despite E.D.'s request, however, L.D. eventually told father's fiancée about the incident, who immediately filed a police report. L.D. testified that she told L.G. "because it was the right thing to do."

{¶ 9} Det. Rosanna McCoy of the city of Westlake Police Department was assigned to investigate the sexual assault allegations levied against Heard. In the course of her investigation, Det. McCoy separately interviewed Mother, L.G., L.D., E.D., and Heard. Det. McCoy testified that she conducted her first interview of E.D. at her high school. Det. McCoy stated that E.D. was initially "stubborn" and unwilling to provide any information. Ultimately, however, E.D. disclosed to Det. McCoy that Heard had sexually assaulted her in a hotel room. She then memorialized her statement in writing.

{¶ 10} Following the initial interview at E.D.'s high school, Det. McCoy met with E.D. at the police department. Det. McCoy testified that E.D. wanted to share additional information that she did not provide in her initial statement. On this occasion, E.D. discussed the incidents where Heard had sexually abused her in Mother's van and in her hotel bed the evening before the alleged vaginal rape occurred.

{¶ 11} Det. McCoy testified that she interviewed Heard after he was arrested on a warrant issued in connection with this case. Det. McCoy testified that Heard acknowledged spending time with E.D., but denied touching E.D. He further denied ever spending the night with Mother and E.D. in the hotel located in Westlake, Ohio.

{¶ 12} Mother testified on behalf of the defense. In contrast to the testimony provided by E.D., Mother testified that Heard was never left alone with her children. Mother stated that she did not believe E.D.'s accusations because "[she] never left [E.D.] alone." Mother further testified that E.D. never told her about the alleged incidents of

3

sexual assault. Mother explained that she indirectly learned about the allegations based on what E.D. had communicated to Mother's oldest daughter. She testified that if E.D. would have told her about the sexual assaults, she would have done something about it and would have notified Father.

(ECF No. 9-1, Exhibit 11); *State v. Heard*, No. 107777, 2019 WL 3238612, 2019-Ohio-2920 (8th Dist. July 18, 2019).

## III. PROCEDURAL HISTORY

### A. State Court Conviction

On December 19, 2017, Mr. Heard was indicted in the Cuyahoga County Court of Common Pleas on the following offenses: (1) three first-degree felony counts of rape in violation of R.C. § 2907.02(A)(2); and (2) three first-degree felony counts of kidnapping with a sexual motivation specification in violation of R.C. §§ 2905.01(A)(4) and 2941.147(A). (ECF No. 9-1, Exhibit 1). Mr. Heard pled not guilty to all charges. (ECF No. 9-1, Exhibit 2).

The case proceeded to a jury trial on the remaining counts. At the close of the state's case, the trial court granted Mr. Heard's motion for acquittal with respect to Count Two (kidnapping). (ECF No. 9-1, Exhibit 3). The remaining counts went to the jury. On July 30, 2018, the jury convicted Mr. Heard on Count Five (rape) and acquitted him on the remaining counts. *Id.*

On August 2, 2018, Mr. Heard, through counsel, filed a motion for acquittal or, in the alternative, for a new trial. (ECF No. 9-1, Exhibit 4). In his motion, Mr. Heard argued that he should be acquitted because the state presented insufficient evidence in light of the State's inadequate questioning and E.D.'s inconsistent testimony. In particular, Mr. Heard argued that he could not have accosted E.D. as charged in the indictment given the small size of the hotel room in which the incident was alleged to have occurred and the presence of both E.D.'s mother and sister at the time of the alleged incident. In the alternative, he argued that the trial

court should order a new trial because the jury's verdict was against the manifest weight of the evidence. On September 12, 2018, the trial court denied Mr. Heard's motion. (ECF No. 9-1, Exhibit 6). On September 12, 2018, the trial court sentenced Mr. Heard to a six-year prison term. (ECF No. 9-1, Exhibit 7).

### B. Direct Appeal

On October 9, 2018, Mr. Heard, through counsel, timely filed a notice of appeal to the Eighth Appellate District. (ECF No. 9-1, Exhibit 8). In his appellate brief, Mr. Heard raised the following four assignments of error:

1. There was insufficient evidence produced at trial to support a finding of guilt on all counts.

2. Appellant's convictions were against the manifest weight of the evidence.

3. Appellant was denied his Sixth Amendment right to the effective assistance of counsel in his trial.

4. The cumulative errors committed during the trial deprived the appellant of a fair trial.

(ECF No. 9-1, Exhibit 9).

In his first assignment of error, Mr. Heard argued that the evidence failed to satisfy every element of rape under Ohio law. In particular, Mr. Heard argued that there was no evidence supporting a showing that the alleged sexual conduct between him and E.D. was "forcible," as required under R.C. § 2907.02(A)(2), because the State did not show either physical or psychological compulsion to overbear E.D.'s will. In his second assignment of error, Mr. Heard argued that the verdict was against the manifest weight of the evidence because E.D.'s testimony, which was the only evidence against him, was rife with inconsistencies and non-credible assertions.

On July 18, 2019, the Eighth Appellate District affirmed the jury's verdict. (ECF No.

9-1, Exhibit 11). On August 29, 2019, Mr. Heard, through counsel, filed a notice of appeal to the Ohio Supreme Court. (ECF No. 9-1, Exhibit 12). In his memorandum in support of jurisdiction, Mr. Heard raised a single proposition of law:

1. As a matter of law, a rape conviction rests on insufficient evidence and violates due process under the Fifth and Fourteenth Amendments to the Constitution of the United States as well as Article I Section 10 of the Ohio Constitution when the state alleges force by way of implied threat, and there is no evidence of any threat at all.

(ECF No. 9-1, Exhibit 13). On October 15, 2019, the Ohio Supreme Court declined to accept jurisdiction over Mr. Heard's appeal. (ECF No. 9-1, Exhibit 15).

### C. **Federal Habeas Action**

On October 12, 2020, Mr. Heard, through counsel, filed his 28 U.S.C. § 2254 habeas petition. (ECF No. 1). Mr. Heard's habeas petition raises four grounds for relief:

1. The Ohio courts ruled contrary to, or unreasonably applied, clearly-established Supreme Court case law by failing to find that the evidence was insufficient to support the verdict on Count Five.

2. The Ohio courts made unreasonable factual determinations in light of the record in failing to find that the evidence was insufficient to support the verdict of Count Five.

3. The Ohio courts ruled contrary to, or unreasonably applied, clearly-established Supreme Court case law by finding that Heard's trial counsel was effective despite his failure to investigate and his conduct in calling the alleged victim's mother for the defense, a witness whom he had not interviewed before trial, whose testimony he could not predict, and whose testimony was harmful to the defense.

4. The Ohio courts made unreasonable factual determinations in light of the trial record in finding that Heard's trial counsel was effective despite his failure to investigate and his conduct in calling the alleged victim's mother for the defense, a witness whom he had not interviewed before, whose testimony he could not predict, and whose testimony was harmful to the defense.

*Id*.

Mr. Heard filed a brief in support of his petition on November 4, 2020. (ECF No. 5).

6

The Warden filed an answer/return of writ on February 26, 2021. (ECF No. 9). Mr. Heard filed a traverse on March 18, 2021. (ECF No. 11).

## IV. STANDARDS OF REVIEW AND GOVERNING LAW

### A. Jurisdiction

28 U.S.C. § 2254(a) authorizes this court to entertain an application for a writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him[.]" 28 U.S.C. § 2241(d). The Cuyahoga County Court of Common Pleas sentenced Mr. Heard, and the Court takes judicial notice that Cuyahoga County is within this Court's geographic jurisdiction. Accordingly, this Court has jurisdiction over Mr. Heard's § 2254 petition.

### B. Exhaustion and Procedural Default

Under AEDPA, state prisoners must exhaust all possible state remedies, or have no remaining state remedies, before a federal court can review a petition for a writ of habeas corpus on the merits. 28 U.S.C. § 2254(b) and (c); *see also Rose v. Lundy*, 455 U.S. 509 (1982). This entails giving the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In other words, "the highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). The exhaustion requirement, however, "refers only to remedies still available at the time of the federal petition." *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982). It "does not require

7

pursuit of a state remedy where such a pursuit is clearly futile." *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir. 1981).

Procedural default is a related but "distinct" concept from exhaustion. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). It occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available. *See generally Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle*, 456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806. In determining whether there has been a procedural default, the federal court again looks to the last explained state-court judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991); *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000). A claim is fairly presented when it has been asserted as a federal constitutional issue at every state of the state court review process. *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 285 (6th Cir. 2010); *Williams*, 460 F.3d at 806.

Procedural default, however, can be excused and will not preclude consideration of a claim on federal habeas review if the petitioner can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law;" or (2) "failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A "fundamental miscarriage of justice" can occur only when the procedurally defaulted claim – supported by new reliable evidence not presented at trial – would establish that the petitioner was "actually innocent" of the offense. *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006).

C.  **Cognizable Federal Claim**

Under 28 U.S.C. § 2254(a), a state prisoner may challenge his custody "only on the

8

ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all." *Glaze v. Morgan,* No. 1:19-CV-02974, 2022 WL 467980, at *4 (N.D. Ohio Jan. 18, 2022) (quoting *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991)). Thus, "errors in application of state law . . . are usually not cognizable in federal habeas corpus." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.").

A federal habeas court does not function as an additional state appellate court; it does not review state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)). Instead, "federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Id.* (quotation omitted). Moreover, "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998).

### D. **AEDPA Standard of Review**

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

9

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(*Id.*)

To determine whether relief should be granted, the Court must use the "look-through" methodology and look to the "last explained state-court judgment" on the petitioner's federal claim. *Ylst*, 501 U.S. at 804 ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play."); *Wilson v. Sellers*, 138 S. Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.").

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotations and citations omitted). "[U]nder the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The unreasonable application clause requires the state court decision to be more than incorrect or erroneous —it must be "objectively unreasonable." *Id.*

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state court decision rejecting a claim, the federal court may overturn the state court's

10

decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting 28 U.S.C. § 2254(d)(2)). A state court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the trial court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). A state court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's ... determination." *Rice v. Collins*, 546 U.S. 333, 341-42 (2006). The prisoner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (citing 28 U.S.C. § 2254(e)(1)).

For state prisoners, the § 2254(d) standard "is difficult to meet . . . because it is meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is because, "[a]s amended by AEDPA, § 2254(d) is meant only to stop short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id.* at 103. "It preserves authority to issue the writ in cases where there is no possibility [that] fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents" and "goes no further." *Id.* Thus, in order to obtain federal habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

## V. ANALYSIS

### A. Grounds One and Two

In Ground One, Mr. Heard argues that the Ohio courts erred in finding that the

11

evidence was sufficient to support the verdict on Count Five. In Ground Two, Mr. Heard argues that the Ohio courts made unreasonable factual determinations in light of the record in finding that the evidence was sufficient to support the verdict. Given the overlap in the two grounds, the parties have addressed them together in their briefs, and I will do the same here.

Challenges to a state court conviction based on the sufficiency of the evidence are properly cognizable in a federal habeas corpus petition. *See Jackson v. Virginia*, 443 U.S. 307, 321 (1979). In reviewing the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. The reviewing court may not "reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).

Review of sufficiency of the evidence challenges involves "a double layer of deference[.]" *White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009). "First, [a court] must view the evidence in the light most favorable to the prosecution, and determine whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Mathis v. Colson*, 528 F. App'x 470, 476 (6th Cir. 2013) (quoting *Jackson*, 443 U.S. at 319). "Second, 'even were [a court] to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [a court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable.'" *Id.* (quoting *Brown,* 567 F.3d at 205). Under the *Jackson* standard, a habeas petitioner "who challenges the sufficiency of the evidence to sustain his conviction faces a nearly insurmountable hurdle." *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir.

12

2011) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

Mr. Heard was convicted of rape in violation of R.C. § 2907.02(A)(2). That provision provides that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." *Id*. Ohio law defines "force" as "any violence, compulsion, or constraints physically exerted by any means upon or against a person or thing." R.C. § 2901.01(A)(1).

Mr. Heard argues that, even assuming he had sex with E.D., there was insufficient evidence to demonstrate that he used or threatened to use force against her. Instead, he argues that E.D. "expressed no unwillingness to engage in the sexual conduct and testified that her reason for not saying or doing anything to stop the conduct was to shield her younger sister from observing the sexual acts." (ECF No. 5 at 2). Mr. Heard also argues that "nothing was introduced at trial to demonstrate that [he] did anything to create the belief that he would use force if E.D. did not submit." *Id*. at 17. Finally, Mr. Heard argues that E.D.'s testimony was "not credible" and was "not believed by the jury" because the jury acquitted him of four other counts that similarly depended on her testimony. (ECF No. 11 at 4).

Mr. Heard presented the same arguments to the Eighth Appellate District, which rejected them on the merits. Specifically, the Eighth Appellate District held as follows:

> {¶ 16} When assessing a challenge to the sufficiency of the evidence, a reviewing court examines the evidence admitted at trial and determines whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id*. A reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997).
>
> {¶ 17} It is well established that the elements of an offense may be proven by direct evidence, circumstantial evidence, or both. *See State v. Durr*, 58 Ohio St.3d 86, 568

13

N.E.2d 674 (1991). Direct evidence exists when "a witness testifies about a matter within the witness's personal knowledge such that the trier of fact is not required to draw an inference from the evidence to the proposition that it is offered to establish." *State v. Cassano*, 8th Dist. Cuyahoga No. 97228, 2012-Ohio-4047, ¶ 13. Circumstantial evidence, on the other hand, is evidence that requires "the drawing of inferences that are reasonably permitted by the evidence." Id. *See also State v. Hartman*, 8th Dist. Cuyahoga No. 90284, 2008-Ohio-3683, ¶ 37 ("Circumstantial evidence is the proof of facts by direct evidence from which the trier of fact may infer or derive by reasoning other facts in accordance with the common experience of mankind.").

{¶ 18} In this case, Heard was found guilty of rape in violation of R.C. 2907.02(A)(2). The rape statute provides that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." R.C. 2907.02(A)(2).

{¶ 19} On appeal, Heard argues there was insufficient evidence to prove "that the sexual conduct alleged between [Heard] and E.D. was forcible." Heard contends that "the state offered no evidence to show either physical or psychological compulsion sufficient to overbear E.D.'s will." Heard notes that E.D. testified that she did not tell Heard to stop and did not "do anything to indicate she was anything other than a willing participant."

{¶ 20} "The force and violence necessary to commit the crime of rape depends upon the age, size and strength of the parties and their relation to each other." *State v. Eskridge*, 38 Ohio St.3d 56, 58, 526 N.E.2d 304 (1988). "Force need not be overt and physically brutal, but can be subtle and psychological. As long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established." *State v. Fowler*, 27 Ohio App.3d 149, 154, 500 N.E.2d 390 (8th Dist.1985).

{¶ 21} In this case, E.D. testified that she did not want to have vaginal sex with Heard. Nevertheless, Heard "grabbed" E.D. by her arm, "moved" her into the bathroom, "pushed" her against the wall, and "pulled" her sweatpants down to facilitate the vaginal rape. We recognize that E.D. did not attempt to fight Heard off or verbally tell him to stop. However, E.D. explained that she "froze" in that moment because she was "afraid." She testified that she felt like she could not "talk, or move, or anything." Viewing this testimony in a light most favorable to the prosecution, we find a rational trier of fact could conclude beyond a reasonable doubt that E.D.'s will was overcome by fear. Accordingly, we find Heard's rape conviction is supported by sufficient evidence.

(ECF No. 10-1, Exhibit 11).

Applying the first layer of the "double layer of deference," *White*, 602 F.3d at 710, I agree that a rational trier of fact could have found the essential elements of rape beyond a

14

reasonable doubt. It is first important to note that I must defer to the Eighth Appellate District's holding regarding the amount of force required under Ohio law, including that such force may be "subtle and psychological." "[A] state court's interpretation of state's law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005)); *see also White*, 602 F.3d at 711 (holding that "federal courts may not reinterpret state law" when reviewing habeas claims by federal prisoners); *Thompson v. Bock,* 215 F. App'x 431, 436 (6th Cir.2007) ("State courts, after all are the final arbiters of the state law's meaning and application and [federal courts] are not the appropriate forum to adjudicate such issues.").

Applying that standard, a rational trier of fact could have found that sufficient evidence existed to establish that Mr. Heard exercised the requisite degree of force. E.D. testified that Mr. Heard grabbed her, pushed her against the wall, and pulled her sweatpants down. E.D. also testified that she "froze," was "afraid," and could not "talk, or move, or anything." E.D.'s testimony adequately establishes the requisite degree of force under Ohio law, and it is well-settled that "the testimony of the victim alone is constitutionally sufficient to sustain a conviction." *Tucker v. Palmer*, 541 F.3d 652, 658 (6th Cir. 2008); *see also United States v. Terry*, 362 F.2d 914, 916 (6th Cir. 1966) ("The testimony of the prosecuting witness, if believed by the jury, is sufficient to support a verdict of guilty.").

Mr. Heard argues, however, that E.D.'s testimony is insufficient to support a conviction because it was not credible. But assessing the credibility of witnesses is generally beyond the scope of federal habeas review for sufficiency of the evidence claims. *See Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 20003); s*ee also United States v. Beverly*, 369 F.3d 516, 532 (6th Cir. 2004) ("[D]etermining the credibility of witnesses is a

15

task for the jury, not this court."). Moreover, it is well established that "attacks on witness credibility are simply challenges to the quality of the government's evidence and not to the sufficiency of the evidence." *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002) (quoting *United States v. Adamo*, 742 F.2d 927, 935 (6th Cir. 1984) *abrogated on other grounds by Buford v. United States*, 532 U.S. 59 (2001)).

Finally, Mr. Heard argues that the jury implicitly found that E.D. was not credible when it acquitted him of the other charges against him, which similarly rested on her testimony. However, "it is the responsibility of the jury — not the court — to decide what conclusions should be drawn from evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam). *Jackson* "unambiguously instructs that a reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume — even if it does not affirmatively appear in the record — that the trier of the fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Id.* at 7 (quoting *Jackson v. Virginia*, 443 U.S. 307, 326 (1979)). I must therefore find that the jury resolved any inconsistencies in E.D.'s testimony in the State's favor and found her testimony credible with respect to Count Five. Applying the first layer of deference, I thus conclude that a rational trier of fact could have found Mr. Heard guilty of rape.

And even if I had concluded (which I do not) that a rational trier of fact could not have found Mr. Heard guilty beyond a reasonable doubt, on habeas review I must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. *White*, 602 F.3d at 710. Applying the second layer of the "double layer of deference," I do not find the state appellate court's sufficiency determination unreasonable for the reasons set forth above. I therefore recommend that the Court deny Mr. Heard's petition with respect to Grounds One

and Two.

### B. Grounds Three and Four

In Grounds Three and Four, Mr. Heard argues that he was denied the effective assistance of trial counsel in violation of the Sixth Amendment. The Warden argues that Mr. Heard procedurally defaulted on Grounds Three and Four because he did not raise them in his direct appeal to the Ohio Supreme Court. In his traverse, Mr. Heard concedes that he has procedurally defaulted on both grounds. Mr. Heard also concedes that he cannot establish cause and prejudice to excuse the default, and that he "sees no way to present a claim that procedural default should be set aside to avoid a miscarriage of justice." (ECF No. 11 at 1). Because the parties agree that Mr. Heard procedurally defaulted on his ineffective assistance of counsel arguments, no analysis is necessary, and I recommend that the Court dismiss and/or deny Grounds Three and Four.

## VI. RECOMMENDATION REGARDING CERTIFICATE OF APPEALABILITY

### A. Legal Standard

As amended by AEDPA, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "[a] 'substantial showing' requires the applicant to 'demonstrate that the issues are debatable among jurists of reason; that a court

17

could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further.'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)). The statute requires that certificates of appealability specify which issues are appealable. 28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. "If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." *Id.*; see also 28 U.S.C. § 2253(c)(3) ("The certificate of appealability under [§ 2253(c)(1)] shall indicate which specific issue or issues satisfy the showing required by [§ 2253(c)(2)]."). In light of the Rule 11 requirement that the court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the certificate of appealability issue is included here.

### B. Analysis

Mr. Heard has not made a substantial showing of a denial of a constitutional right for the reasons set forth above. Because jurists of reason would not find these conclusions debatable, I recommend that no certificate of appealability issue in this case.

## VII. RECOMMENDATION

For the foregoing reasons, I RECOMMEND that the DISMISS and/or DENY Mr. Heard's petition for a writ of habeas corpus under 28 U.S.C. § 2254. I also recommend that the Court not grant him a certificate of appealability.

Dated: September 11, 2023  *s/Jennifer Dowdell Armstrong*
Jennifer Dowdell Armstrong
U.S. Magistrate Judge

**NOTICE TO PARTIES REGARDING OBJECTIONS**

Local Rule 72.3(b) of this Court provides:

**Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate

19

the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).