UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DON M. HEARD, | ) | |
| | ) | CASE NO. 1:20-cv-2299 |
| Petitioner, | ) | |
| | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| v. | ) | |
| | ) | |
| DAVID GRAY, Warden, | ) | **MEMORANDUM ORDER** |
| | ) | **AND ORDER** |
| Respondent. | ) | |

Before the Court is a Report and Recommendation ("R&R") from Magistrate Judge Jennifer Dowdell Armstrong (Doc. No. 13), which recommends that the relief requested in the Petition for Writ of Habeas Corpus ("Petition") filed by Don M. Heard (Doc. No. 1) be denied. The R&R further recommends that this Court not grant Mr. Heard a certificate of appealability. (Doc. No. 13 at 918-19.)[1] Petitioner timely filed objections to the R&R (collectively, the "Objection"). (Doc. No. 14.)

For the following reasons, the R&R's recommendation that the Petition for Writ of Habeas Corpus be denied is ACCEPTED, Petitioner's objections to the R&R are OVERRULED, and the Petition is DENIED.

**I.  Background**

The facts related to Petitioner's criminal trial are set forth in an opinion from the Ohio Court of Appeals. *See State v. Heard*, 2019-Ohio-2920, 2019 WL 3238612, at *1-2 (Ohio Ct.

---

[1] For ease and consistency, record citations are to the electronically stamped CM/ECF document and PageID# rather than any internal pagination.

1

App. July 18, 2019), *appeal denied*, 157 Ohio St.3d 1443, 132 N.E.3d 709 (Ohio Oct. 15, 2019).[2] Below the Court summarizes some of the testimony pertinent to the Petition.

In 2017, Petitioner Heard was 22 years old and began a romantic relationship with K.D., who was the mother of two minor daughters, E.D. and L.D. *Id.* ¶ 5. K.D. was experiencing financial difficulties during 2017. She and her daughters periodically lived in hotel rooms or slept nights in K.D.'s van. *Id.*

E.D. was then 14 years old. *Id.* She testified that she first met Heard in December 2016. E.D. stated that initially she liked Heard and that they shared common interests given their relative proximity in age. *Id.* E.D. testified that over time, Heard began doing things that made her feel uncomfortable. *Id.* ¶ 6.

On the first occasion, Heard asked E.D. if she was wearing underwear while they were together at a mall. *Id.* On the second occasion, Heard was alleged to have "touched [E.D.'s] vagina with his hand" while they were in the van one evening. *Id.* E.D. testified that Mother was sleeping in the back of the van at the time of the incident. *Id.* When asked to describe Heard's specific actions, E.D. stated that Heard placed his hand inside her underwear and penetrated her vagina with his fingers. *Id.* The incident lasted approximately 45 seconds and E.D. "stayed still" because she was "in shock of what was happening." *Id.* Once Heard removed

---

[2] The R&R excerpted facts from that opinion. (*See* Doc. No. 13 at 903-06.) Petitioner has not objected to the R&R's reliance on the state court appellate opinion to establish the factual record. Under the Antiterrorism and Effective Death Penalty Act of 1998 ("AEDPA"), the facts established in the state courts "shall be presumed to be correct" unless Petitioner rebuts "the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). With no effort to rebut the presumption of correctness having been made, the facts established in the state court proceedings are presumed to be correct. *Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual . . . conclusions, under a de novo or any other standard, when neither party objects to those findings.")

his hand, he "grabbed the back of [E.D.'s] neck and pushed [her] head down" towards his penis. E.D. testified that Heard made her "give him oral until he ejaculated." *Id.* E.D. stated that she did not fight back or tell Heard "no" because she was scared. *Id.*

On a third occasion, E.D. was staying overnight with L.D. and Heard in a hotel room located in Westlake, Ohio. *Id.* ¶ 7. Earlier in the evening, Heard and K.D. went to a nightclub together and had been drinking. *Id.* E.D. testified that when Heard returned to the hotel room, he approached her as she was sleeping in a bed with her sister L.D. *Id.* When K.D. was not in the room, Heard pulled away a blanket and performed oral sex on E.D. *Id.*

The following morning, E.D. was washing her face in the hotel room sink when Heard "grabbed her" and "moved her" into the bathroom. *Id.* Heard then pulled down E.D.'s sweatpants and inserted his penis into her vagina until he ejaculated. *Id.* E.D. stated that she did not fight Heard off or tell him to stop because she was scared her sister L.D. would see or hear what was occurring. *Id.* She further stated that she was afraid and "felt like [she] couldn't talk, move, or anything." *Id.*

On December 19, 2017, Mr. Heard was indicted in the Cuyahoga County Court of Common Pleas on the following offenses: (1) three first-degree felony counts of rape in violation of Section 2907.02(A)(2) of the Ohio Revised Code; and (2) three first-degree felony counts of kidnapping with a sexual motivation specification in violation of Sections 2905.01(A)(4) and 2941.147(A). (Doc. No. 13 at 905.) Mr. Heard pled not guilty to all charges. (*Id.*).

At the close of the state's case, the trial court granted Mr. Heard's motion for acquittal with respect to Count Two for kidnapping. (ECF No. 9-1, Exhibit 3). The remaining counts went to the jury. On July 30, 2018, the jury convicted Mr. Heard on Count Five for vaginal rape under

3

Section 2907.02(A)(2) for the bathroom incident. The jury acquitted Heard on the remaining counts. (*Id.*)

On appeal, Heard raised four assignments of error:

1. There was insufficient evidence produced at trial to support a finding of guilt on all counts.

2. Appellant's convictions were against the manifest weight of the evidence.

3. Appellant was denied his Sixth Amendment right to the effective assistance of counsel in his trial.

4. The cumulative errors committed during the trial deprived the appellant of a fair trial.

(Doc. No. 13 at 906.) The Court of Appeals affirmed the jury verdict. (*Id.*)

In Heard's memorandum in support of jurisdiction to the Ohio Supreme Court, he raised one proposition of law:

> As a matter of law, a rape conviction rests on insufficient evidence and violates due process under the Fifth and Fourteenth Amendments to the Constitution of the United States as well as Article I Section 10 of the Ohio Constitution when the state alleges force by way of implied threat, and there is no evidence of any threat at all.

(*Id.* at 907.) The Ohio Supreme Court denied review. (*Id.*)

On October 12, 2020, Mr. Heard, through counsel, filed his 28 U.S.C. § 2254 habeas petition. (Doc. No. 1.) Mr. Heard's habeas petition raises four grounds for relief:

**One**: The Ohio courts ruled contrary to, or unreasonably applied, clearly-established Supreme Court case law by failing to find that the evidence was insufficient to support the verdict on Count Five.

**Two**: The Ohio courts made unreasonable factual determinations in light of the record in failing to find that the evidence was insufficient to support the verdict of Count Five.

4

**Three**: The Ohio courts ruled contrary to, or unreasonably applied, clearly-established Supreme Court case law by finding that Heard's trial counsel was effective despite his failure to investigate and his conduct in calling the alleged victim's mother for the defense, a witness whom he had not interviewed before trial, whose testimony he could not predict, and whose testimony was harmful to the defense.

**Four**: The Ohio courts made unreasonable factual determinations in light of the trial record in finding that Heard's trial counsel was effective despite his failure to investigate and his conduct in calling the alleged victim's mother for the defense, a witness whom he had not interviewed before, whose testimony.

The Petition was fully briefed before the Magistrate Judge (Doc. Nos. 5, 9, 11), culminating in the issuance of the R&R (Doc. No. 13). Heard timely objected. (Doc. No. 14.)

## II.    Law and Analysis

### A.    Standard of Review

"Federal habeas review of [a] state court's decision is governed by the standards established by the AEDPA." *Harris v. Stovall*, 212 F.3d 940, 942 (6th Cir. 2000). The AEDPA provides in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of

5

> a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254. "This presumption of correctness applies even to factual findings made by a state court of appeals based on the state trial record." *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001) (citing *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981)).

To prevail under the AEDPA, Petitioner "must meet two requirements. First, he must show that his incarceration violates the Constitution or federal law. And second, [he] must prove that the [Ohio] Court of Appeals made an 'unreasonable' error of law or fact." *James v. Corrigan*, 85 F.4th 392, 395 (6th Cir. 2023) (citations omitted). However, this Court does "not consider on habeas review a state court's determination of state law." *Railey v. Webb*, 540 F.3d 393, 398 (6th Cir. 2008). That is because "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).

This Court makes "a de novo determination of those portions of the [Magistrate Judge's] report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to.").

### B. Sufficiency of Evidence Claims

Petitioner's First and Second grounds for relief are that (1) the evidence was insufficient to support a guilty verdict on the charge of rape in violation of Ohio Rev. Code § 2907.02(A)(2), and (2) the conviction was against the manifest weight of the evidence. (Doc. No. 1 at 1-2.) As to the First ground, Petitioner elaborates that the Ohio courts ruled contrary to, or unreasonably applied, clearly established federal case law, by failing to find that the evidence was insufficient

6

to support the guilty verdict. (Doc. No. 5 at 23.) As to the Second ground, Petitioner asserts that the Ohio courts made unreasonable factual determinations in light of the trial record in failing to find that the evidence was insufficient to support the guilty verdict. (*Id.*)

The Magistrate Judge wrote in the R&R that "[g]iven the overlap in the [first] two grounds, the parties have addressed them together in their briefs, and I will do the same here." (Doc. No. 13 at 913.) Petitioner does not object to that approach, nor does he dispute the overlap. In fact, the Objection employs the same approach, referring to a singular "insufficiency of the evidence issue presented." (Doc. No. 14 at 923; *see also id.* at 924 (referring to a singular "insufficiency claim").)

Because the Objection raises several points and arguments – none of which distinguish between the First and Second grounds – this Court considers together all of Petitioner's points along with both the First and Second grounds for relief.

### 1. The Magistrate's Characterization of Habeas Review

Petitioner expresses a concern regarding the admittedly "difficult to meet" standards that apply to habeas petitions challenging sufficiency of the evidence in support of a jury verdict. (Doc. 14 at 923.) Petitioner urges that the standard should not be characterized as if it was impossible to satisfy. (*See id.*) The Objection suggests that the R&R "might" be read to imply "a foregone conclusion that this type of claim cannot succeed." (*Id.*)

The discussion at pages 923-24 of the Objection points out general trends and critiques of federal habeas case law. The Objection does not specify any point in *this* R&R where the Magistrate Judge either overstated, misstated, or misapplied habeas precedent. Thus, this objection is not entitled to de novo review and is overruled because it lacks the specificity required by Fed. R. Civ. P. 72(b). *See generally Howard v. Sec'y of Health & Hum. Servs.*, 932

F.2d 505, 509 (6th Cir. 1991); *Wallace v. Adams*, 51 F.3d 274 (6th Cir. 1995) ("A party must make specific objections in order to pinpoint those portions of the magistrate judge's report that the district court must specifically consider . . . .").

### 2. Petitioner's Legal Theory

Petitioner objects to the R&R on the ground that the evidence at trial was insufficient to convict him of rape under Ohio Revised Code Section 2907.02(A)(2). The error committed by the Ohio Court of Appeals, he explains, was "to find that force existed . . . based on testimony of fear without any evidence of physical force or any testimony of a fear of potential physical force. (Doc. No. 14 at 928.) In his appeal to the Ohio Supreme Court, Petitioner argued that "the state alleges force by way of implied threat and there is no evidence of any threat at all." (*See* Doc. No. 5 at 28-29.) His Objection asserts that "the element the state failed to prove in this case is that Heard used or threatened to use force against his accuser." (Doc. No. 14 at 925.) Petitioner's briefs to the Magistrate Judge, along with his Objection, discuss cases where Ohio courts considered whether defendants in various circumstances had compelled victims to submit by threat of force. Rev. Code § 2907.02(A)(2).

With respect to the R&R, the Magistrate Judge reasoned that "E.D.'s testimony adequately establishes the requisite degree of force under Ohio law, and it is well-settled that 'the testimony of the victim alone is constitutionally sufficient to sustain a conviction.'" (Doc. No. 13 at 916 (quoting *Tucker v. Palmer*, 541 F.3d 652, 658 (6th Cir. 2008)).)

This Court "make[s] a de novo determination," 28 U.S.C. § 636(b)(1), in resolving the Objection – albeit subject to the constraints imposed by the AEDPA and controlling precedent. The Sixth Circuit recently explained that Petitioner "faces an uphill battle. Evidence is only 'insufficient' when, viewing it in the light most favorable to the state, no rational juror would

8

find guilt beyond a reasonable doubt." *James*, 85 F.4th at 395 (citing *Jackson v. Virginia*, 443 U.S. 307, 317-19 (1979). The Sixth Circuit characterized this as a "nearly insurmountable hurdle." *Id.* (quoting *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2011)).

### 3. "Force" Under Ohio Law

In the abstract, Petitioner makes cogent observations regarding case law interpreting "threat of force" under Section 2907.02 of Ohio law. But the arguments are misplaced. The evidence at trial proved physical actions by Petitioner that met the definition of "force" under Ohio law. That made it unnecessary for the jury to make any finding regarding a "threat of force."

The statutory provision under which Petitioner was charged in Count Five of the indictment provides: "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." Ohio Rev. Code § 2907.02. "The legislature's use of the word 'or,' a disjunctive term, signifies the presence of alternatives." *State ex rel. McDonald v. Indus. Comm'n*, 182 N.E.3d 482, 489 (Ohio Ct. App. 2021), *aff'd*, 2023-Ohio-1620, 2023 WL 3484250 (Ohio May 17, 2023).

At trial, the State argued that Petitioner used force in conjunction with his sexual intercourse with the victim. In the State's opening argument, the prosecutor told the jury:

> And one morning E.D. got up to wash her face at the sink that you saw today, and the Defendant was in the bathroom. What you will learn is that after couple times calling E.D.'s name, he pulled E.D. into the bathroom, shoved her face up against that door, pulled her pants down and penetrated her vagina, and raped her . . . .

(Doc. No. 10-2 at 471.) In closing, the prosecutor argued:

> The last rape count is Count 5. This is for the sexual assault in the bathroom of the [motel]. E.D. told you she was washing her face. The Defendant got up, went in the bathroom, grabbed her by her arm, pulled her in the bathroom, pushed her up against the wall, and came behind her.

9

>Her face was towards the wall. He was directly behind her, and forced her into vaginal intercourse with him. The force here is the force of pulling her and pushing her against that wall. That was required in order to vaginally penetrate her and rape her.

(Doc. No. 10-3 at 805.)

>Those arguments comported with the victim's testimony at trial:
>
>Q: What's the next thing you remember happening, or did something happen when you woke up?
>
>A: When I had woke up, had – I woke up pretty early this morning. remember waking up around seven. Seven or eight. So when I woke up, I went over to the sink and washed my face. And while there was like soap on my hands and face, he got up and went to the bathroom, and grabbed me from the sink, and pulled down my sweatpants, the same ones that I was wearing the night before, and stuck his penis inside my vagina.
>
>Q: You said that he grabbed you by the sink. Did he move you anywhere?
>
>A: Um, yeah. He moved me to the bathroom.

(Doc. No. 10-2 at 611.)

The jury was instructed properly that in order to convict Petitioner on Count Five, the State was required to prove beyond a reasonable doubt that Petitioner acted "by purposely compelling her to submit by force or threat of force." (Doc. No. 10-3 at 791.) That instruction tracked the statutory language. *Cf. United States v. Murph*, 707 F.2d 895, 896-97 (6th Cir. 1983) ("The statute under which he was charged . . . is written in the disjunctive, while the indictment was written in the conjunctive. . . . Upon the trial the government may prove and the trial judge may instruct in the disjunctive form used in the statute.") (citation omitted).

The Ohio Court of Appeals held that "the fact that Heard was found not guilty of other rape offenses does not invalidate the weight of the evidence supporting the vaginal rape conviction. Rather, it only demonstrates that the jury carefully considered the evidence and the weight of the testimony in rendering its verdict." *Heard*, 2019 WL 3238612, at *5. The Court

10

noted that "[t]he force and violence necessary to commit the crime of rape depends upon the age, size and strength of the parties and their relation to each other." *Id.* at *3 (quoting *State v. Eskridge*, 526 N.E.2d 304, 306 (Ohio 1988)). "In this case, E.D. testified that she did not want to have vaginal sex with Heard. Nevertheless, Heard 'grabbed' E.D. by her arm, 'moved' her into the bathroom, 'pushed' her against the wall, and 'pulled' her sweatpants down to facilitate the vaginal rape." *Id.* at *4.

Petitioner did not argue in the Petition or Objection that this recitation of facts from the Court of Appeals was erroneous. It does not appear that he argues that the evidence was insufficient to support the description excerpted above from the Court of Appeals opinion. To rebut the presumption of correctness for the factual recitation excerpted above, Petitioner would have to marshal clear and convincing evidence. 28 U.S.C. § 2254(e)(1). He has not done so.

As excerpted above, the Court of Appeals repeatedly used quotation marks around active verbs describing physical acts. Those words come directly from the victim's testimony. These actions meet the statutory definition of "force," which "means any violence, compulsion, or constraint physically exerted by any means upon or against a person . . . ." Ohio Rev. Code § 2901.01(A)(1). It is true that the Court of Appeals went on to discuss the victim's reaction and case law related to fear and threats of *future* force or retribution. But that does not change or override that court's opinion as excerpted above which elsewhere explained why Petitioner's physical acts met the definition of "force."

A reasonable jury could find from the evidence that Petitioner's physical actions *in the moment* compelled or physically constrained the victim. Petitioner grabbed her arm, pulled her inside the bathroom door, pushed her against the bathroom wall, and pulled her pants down.

11

Aside from the physically jarring acts described in the testimony, the context also would support a jury's reasonable inference of compulsion. This was a fourteen year-old girl who had just woken in the morning and was in the midst of washing her face at a sink. A jury reasonably could infer that the girl was stunned or frozen in shock from being suddenly and without discussion grabbed, pulled, pushed, and unclothed.

Petitioner focuses on E.D.'s testimony that a reason she did not cry out during the vaginal rape or during a prior sexual contact made by Petitioner the previous night was that E.D. did not want to alert her sleeping younger sister L.D. to what was transpiring. Fear of such emotional collateral damage to the younger sister is not the same as fear of Petitioner himself, he reasons. Petitioner argues that the testimony does not support a conclusion that he compelled E.D. through a "threat of force."

Putting aside other potential flaws in his reasoning[3], this Court need not go further than the following: Because the jury reasonably could find that Petitioner used force in the moment to accomplish the vaginal rape, it could convict under Section 2907.02(A)(2). That conclusion does not depend on – and does not change regardless of – whether the jury also found that the victim was overcome by fear of some other, future force. The acts of surprise pulling, grabbing, and pushing against a wall were acts of force by which the sex act was accomplished, and that suffices to support the jury verdict and to meet the statutory definitions in Sections 2901.01(A)(1) and 2907.02(A)(2).

---

[3] The Ohio Court of Appeals has cautioned against "preconceived and artificial notions of an appellate court as to how a juvenile rape victim must behave in the first hours immediately following a sexual assault." *In re D.L.*, 2012-Ohio-1796, 2012 WL 1392366, at *7 (Ohio Ct. App. Apr. 23, 2012). In any event, the trial record does not support Petitioner's implicit suggestion that E.D.'s testimony about not wanting to traumatize her sister would somehow preclude a juror from finding that Heard used force to accomplish the sexual act on E.D. in the hotel bathroom.

### C. Ineffective Assistance of Counsel Claims

The Third and Fourth grounds for relief raised in the Petition asserted that Petitioner's state court criminal trial counsel had been ineffective. (Doc. No. 1 at 23-24.) However, Petitioner conceded in his traverse brief to the Magistrate Judge that these ineffective assistance grounds were procedurally defaulted. (Doc. No. 11 at 894-95.) Accordingly, the Magistrate Judge recommended that the ineffective assistance grounds for relief be dismissed or denied. (Doc. No. 13 at 918.) "Generally, a federal court will not review a procedurally defaulted claim on habeas corpus review '[o]ut of respect for finality, comity, and the orderly administration of justice[.]'" *Echols v. Sloan*, No. 1:17-cv-859, 2019 WL 6699452, at *2 (N.D. Ohio Dec. 9, 2019) (quoting *Dretke v. Haley*, 541 U.S. 386, 3889 (2004)).

Petitioner's objection does not address ineffective assistance or object to the Magistrate Judge's recommended disposition of the Third and Fourth grounds for relief. The Court therefore adopts the R&R and dismisses the Third and Fourth grounds for relief. *See generally Bonilla v. Hurley*, 370 F.3d 494, 497-98 (6th Cir. 2004) (affirming dismissal of habeas petition raising procedurally defaulted grounds for relief).

### III. Conclusion

Petitioner's objections are OVERRULED. The Magistrate Judge's recommendation is ADOPTED. Petitioner's request for a writ of habeas corpus and relief from his state court conviction are DENIED. No certificate of appealability will be issued.

**IT IS SO ORDERED.**

**Date:** December 6, 2023

BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE